IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SCANNER GUARD CORPORATION<br>11111 Biscayne Boulevard<br>Building 1, Suite 415<br>Miami, Florida 33181<br><br>     Plaintiff,<br><br>  v.<br><br>EXCELSIS INVESTMENTS, INC.<br>t/d/b/a STEALTH CARD<br>801 West Bay Drive, Suite 470<br>Largo, Florida 33770<br><br>INTERNATIONAL MARKETING GROUP, INC.<br>13 Industrial Drive<br>Pacific, Missouri 63069<br><br>   -and-<br><br>MOBILE DYNAMIC MARKETING, INC.<br>t/d/b/a STEALTH CARD<br>801 West Bay Drive, Suite 470<br>Largo, Florida 33770<br><br>     Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: NO. _____<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: **JURY TRIAL DEMANDED**<br>: |

## COMPLAINT

Plaintiff Scanner Guard Corporation ("Scanner Guard") brings this Complaint against defendants Excelsis Investments, Inc. ("Excelsis"), International Marketing Group, Inc. ("IMG") and Mobile Dynamic Marketing, Inc. ("MDM") (collectively, "Defendants"), and in support thereof avers as follows.

## Nature Of The Action

1. This is an action for false advertising pursuant to the Lanham Act, § 43(a), 15 U.S.C. § 1125(a); unfair competition; and for violation of Florida's Deceptive and Unfair Trade Practices Act (the "FDUTPA"), Fla. Stat. §§ 501.201 *et seq.*

2. Specifically, this action concerns Defendants' false advertising and other knowing and willful misrepresentations made regarding products designed to prevent, among other things, identity theft and credit card fraud.

## The Parties

3. Scanner Guard is a Florida corporation with a principal place of business in Miami, Florida.

4. Upon information and belief, Excelsis is a Delaware corporation with a principal place of business in Largo, Florida.

5. Upon information and belief, MDM is a subsidiary of Excelsis and is likewise a Delaware corporation with a principal place of business in Largo, Florida.

6. Upon information and belief, IMG is a Missouri corporation with a principal place of business in Pacific, Missouri.

## Jurisdiction and Venue

7. This action arises under 15 U.S.C. § 1125(a) and the statutory law of the state of Florida. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); 15 U.S.C. § 1121 (Lanham Act claims); and 28 U.S.C. § 1367 (supplemental jurisdiction over pendant state law claims).

8. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400 because a substantial part of the events or omissions giving rise to the claims occurred in this

District, Defendants are subject to the Court's personal jurisdiction in this District, and/or the injuries resulting from Defendants' conduct occurred in this District.

## Background

9. Many credit and debit cards issued within the past decade have, in addition to a magnetic strip, an embedded radio frequency identification ("RFID") chip.

10. For credit/debit cards, like the magnetic strip, an RFID chip can store certain cardholder's personal and payment data such as the credit card number and expiration date, and allows that data to be read during a point of sale transaction.

11. An RFID chip embedded card allows for greater convenience in the retail setting, in that a merchant may obtain the requisite payment and identification information from its customer merely by having the card waved in front of an RFID scanner.

12. However, such convenience comes with the risk that a hacker within a certain physical proximity of a cardholder, through the use of a concealed RFID reader, or a cell phone with a downloaded app, may be able to surreptitiously steal the cardholder's personal and payment data from an RFID chip embedded card.

13. Plaintiff Scanner Guard is a leading developer, manufacturer and distributor of RFID protection and shielding technology products that mitigate the risk of electronic pilfering of one's personal and payment data from unauthorized hackers.

14. Specifically, Scanner Guard manufactures and sells a product known as the "Scanner Guard Card."

15. The Scanner Guard Card, with patented technology, is roughly the size of a credit card, and is made of materials that disrupt an RFID reader's ability to obtain information from a chip embedded credit card.

3

16. The Scanner Guard Card typically is sold in a pack of two cards.

17. Once purchased, two Scanner Guard Cards are placed in one wallet, one card each at the opposite ends or sides of the wallet, thereby protecting the chip embedded cards in between the two cards; to be clear, two Scanner Guard Cards are required per wallet.

18. Scanner Guard offers its products for sale through retail outlets such as Amazon.com, as well as via the television shopping network QVC.

19. Defendants Excelsis and MDM are competitors of Scanner Guard, and defendant IMG is an agent of Excelsis and MDM.

20. Specifically, Excelsis is the developer and manufacturer of a product known as the "Stealth Card" which—like the Scanner Guard Card—is marketed as protecting consumers' credit cards from RFID hackers.

21. With the assistance of IMG, MDM markets and distributes the Stealth Card through websites operated by MDM, as well as via the television home shopping network The Home Shopping Network ("HSN").

22. Excelsis and MDM conduct business and/or distribute products, individually and through IMG, within the Eastern District of Pennsylvania and throughout the United States, including selling the Stealth Card in Pennsylvania through the websites operated by MDM and on HSN.

4

23. This action seeks redress for, among other things:

A. Defendants' deliberate and unlawful false and misleading representations regarding the Stealth Card, including Defendants' representations that the Stealth Card is the only active RFID protection on the market; that one Stealth Card placed anywhere in a wallet will protect information contained on all RFID enabled cards in the wallet; and that a laboratory test proved that the Stealth Card is effective preventing RFID information theft "100% of the time."

B. Defendants' deliberate and unlawful false and misleading representations, both direct and indirect, regarding plaintiff's Scanner Guard Card, including representations that the Stealth Card is the only active RFID protection available (thereby implying that the Scanner Guard Card is not effective), and that multiple Scanner Guard Cards must be purchased to protect each chip embedded card, thereby requiring potentially "dozens" of Scanner Guard Cards to be placed in one wallet before the product is effective.

### Defendants' False And Misleading Advertisements On HSN

24. Beginning in or about August 2015, Defendants used false and deceptive advertisements while marketing and selling the Stealth Card to consumers.

25. This illegal activity was particularly prevalent on HSN, an interactive television direct-to-consumer retail platform, which offers products for sale via live television programs that air in approximately 95 million homes, 24 hours per day and 7 days per week.

26. For example, on October 30, 2015, in a live show broadcast on HSN, Defendants' on-air sales representative told consumers:

> ...this [Stealth Card] is the ultimate solution for those of you out there concerned about your ID. And I'll tell you that we all need to be because with that new chip out, the radio frequency ID

5

PHIL1 5192526v.1

> [RFID] chip that Robin [HSN host] was telling you about, and over a billion credit cards now—every single card (it's federally mandated in this country)—is going to have the [RFID] chip…
>
> The only problem is that the [RFID] chip also leaves us open to vulnerability. There are bad guys out there with simple devices like a cell phone and a free application at app stores so they can steal your identity…a lot of people think you have to buy a scanner for that. You can just have a regular traditional cell phone and free apps and they can steal from you. It's that easy.
>
> Well, Stealth [Card] did something [about that]. This is the only active protection that's available anywhere on the market…And here's what you do. I'm going to protect my entire wallet because someone's identity is being stolen in this country every two seconds. So I put the Stealth Card in. It doesn't matter what pocket, facing which direction. It doesn't matter. Now my entire wallet is protected [with one Stealth Card]…you don't have to order these, like dozens of them and sandwich one on each side of every single credit card. Can you imagine how thick your wallet would be if you had one of these sandwiching each side of every credit card?

27. While giving this marketing pitch on HSN, Defendants' representative held up plaintiff's product, the Scanner Guard Card, to viewers for the purpose of indicating that plaintiff's product required "dozens of [Scanner Guard Cards] sandwiched….on each side of every single credit card."

28. Defendants' representations were knowingly false when made, were material and were designed to dissuade consumers from purchasing Scanner Guard's product and instead purchase the Stealth Card.

29. Contrary to Defendants' representations:

   A. The Stealth Card is not the only active RFID identify theft protection product available in the marketplace; in fact, the Stealth Card does not appear to provide active theft protection.

6

      B.    The Stealth Card product is not effective with only one card being placed anywhere in a wallet and the locations where the Stealth Cards must be placed in the wallet are essential to the efficacy of the product. Moreover, as confirmed by independent laboratory testing, to prevent reading of data on an RFID enabled card, the Stealth Card had to be placed almost perfectly on top of the RFID enabled card. Furthermore, independent laboratory testing reveled that the Stealth Card failed to protect RFID embedded cards almost 70 percent of the time.

      C.    "Dozens" of Scanner Guard Cards are not required to protect chip embedded cards in a wallet. Rather, only two Scanner Guard Cards are required to be placed in one wallet.

      30.    During other HSN programs aired in September and October 2015, and thereafter, Defendants advertised and promoted the Stealth Card by stating to consumers that the scanners that identity thieves use to steal personal data from credit and debit cards in wallets are so sophisticated that they can scan cards carried by over 1,000 people in one minute with the push of a button; Defendants' on- air sales representative then stated that the Stealth Card was the only active protection available in the marketplace against this activity.

      31.    Defendants' representations were patently and knowingly false when made. Among other things: (i) there are no known scanners available or in use whereby hackers can scan and steal the data on credit and debit cards carried by over 1,000 people in one minute with the push of a button; (ii) a single Stealth Card placed anywhere in the wallet—as Defendants' advertise—cannot prevent the actual scanning of all RFID enabled cards in one's wallet; and, (iii) there are other products available in the marketplace that do offer such protection, including the Scanner Guard Card.

PHIL1 5192526v.1

32.   In another HSN program aired on January 24, 2016, in selling their product to consumers, Defendants not only repeated the foregoing false representations, they added an additional false representation to bolster their product, namely, that a laboratory test proved that the Stealth Card worked "100% of the time" and further confirmed that the Stealth Card protected up to 12 credit and debit cards contained in a wallet.

33.   The laboratory test as presented by Defendants was misleading, in that the purported test only showed one configuration of a Stealth Card and 12 chip embedded cards stacked together in a pile, while Defendants' representatives stated that one Stealth Card, placed anywhere in the wallet, would protect the cards. No test results were presented—nor could any be presented—to evaluate the efficacy of the Stealth Card when placed in the other configurations, and at other locations in the wallet, that were advertised and demonstrated during the HSN program.

34.   Defendants further misrepresented the qualities of the Stealth Card in written materials.

35.   For example, Defendants' state, in their instruction sheet for the Stealth Card that:

> Using our proprietary Power Grid technology, the Stealth Card is able to 100% protect your chipped cards, identifications and key tags. ... The Stealth Card makes RFID scanning of your confidential information impossible by creating a force field around your wallet, handbag or money clip ... so you can now feel safe and secure from virtual pickpocketing.

36.   Independent laboratory testing confirmed that the Stealth Card is not able to protect chipped cards 100 percent of the time. In fact, the Stealth Card was only able to protect RFID chipped cards in men's wallets approximately 30 percent of the time (the Stealth Card was far less effective that that at protecting RFID embedded cards in women's wallets), and only when the Stealth Card is virtually touching the RFID embedded card.

37.     Moreover, independent laboratory testing revealed that the Stealth Card does not actively react to RFID card readers in any way; rather, the Stealth Card contains a metallized grid that purports to shield wallets, handbags and money clips. However, as set forth above, the testing also revealed that, unless the RFID embedded card is virtually touching the Stealth Card, the Stealth Card is not capable of any significant protection, and, contrary to Defendants' representations, the Stealth Card provides no "force field" around a wallet.

38.     Defendants' representations were patently and knowingly false when made, or in the alternative, were negligently made and/or made with reckless disregard for the truth thereof.

39.     Despite being placed on notice of their unlawful conduct, Defendants' false and misleading representations regarding their Stealth Card product, and plaintiff's competing Scanner Guard Card, continue.

40.     Defendants' above representations are not statements of subjective opinions regarding these products but, rather, are capable of being systematically, reliably and scientifically measured.

## Count I
## False Advertising Under 15 U.S.C. § 1125(a)

41.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

42.     Defendants have made and distributed in interstate commerce and in this District advertisements that contain false and misleading statements of fact regarding the Stealth Card and Scanner Guard Card products.

43.     These advertisements contain actual misstatements and/or misleading statements or failures to disclose, and/or were likely to deceive or cause confusion among consumers.

9

44.     Defendants advertisements and statements actually deceive, or have a tendency to deceive a substantial segment of Defendants' customers and potential customers, as well as Scanner Guard's customers and potential customers, in that Scanner Guard's customers and potential customers are more likely to purchase Defendants' Stealth Card product rather than Scanner Guard's product as a result of Defendants' deception.

45.     Defendants' deceptive advertising is material in that concerns and inherent quality or characteristics of Stealth Card's and Scanner Guard's products, and is likely to influence the purchasing decisions of Stealth Card's and Scanner Guard's customers and prospective customers.

46.     Defendants' false and misleading advertising statements and omissions have injured, and continue to insure, Scanner Guard and consumers.

47.     Defendants' false and misleading advertising statements and omissions violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

48.     Defendants have caused, and will continue to cause, immediate and irreparable injury to Scanner Guard, including injury to Scanner Guard's business, reputation and goodwill, for which there is no adequate remedy at law.

49.     Scanner Guard is therefore entitled to an injunction under 15 U.S.C. § 1116 restraining Defendants, their agents, employees, representatives and all persons acting in concert with Defendants from engaging in any future acts of false advertising, and further ordering removal of all of Defendants' false advertisements.

50.     Pursuant to 15 U.S.C. § 1117, Scanner Guard is entitled to recover from Defendants the damages sustained by Scanner Guard as a result of Defendants' acts in violation

of 15 U.S.C. § 1125(a). Scanner Guard is, at present, unable to ascertain the full extent of the monetary damages it has sustained on account of Defendants' illegal acts.

51.     Pursuant to 15 U.S.C. § 1117, Scanner Guard is entitled to recover from Defendants the gains, profits and advantages that Defendants have obtained as a result of Defendants' acts in violation of 15 U.S.C. § 1125(a). Scanner Guard is, at present, unable to ascertain the full extent of the gains, profits and advantages Defendants have obtained on account of their illegal acts.

52.     Pursuant to 15 U.S.C. § 1117, Scanner Guard is entitled to recover the costs of this action. Defendants' conduct was undertaken willfully and with the intention of causing confusion, mistake or deception, thus making this an exceptional case entitling Scanner Guard to recover additional damages and reasonable attorneys' fees.

**WHEREFORE**, Scanner Guard demands judgment in its favor and against Defendants on Count I of its Complaint as follows:

A.     That the Court enter temporary, preliminary and permanent injunctive relief prohibiting Defendants, their agents or anyone working for, in concert with or on behalf of Defendants or their agents from engaging in false or misleading advertising with respect to the Stealth Card and Scanner Guard Card products as prohibited by Section 43(a) of the Lanham Act, which relief includes but is not limited to ordering the removal of all false or misleading advertisements, and that there be corrective advertising to remedy the effects of Defendants' false advertising,

B.     That the Court order Defendants to correct any erroneous impression that consumers may have derived concerning the nature, characteristics or qualities of the Stealth

Card and the Scanner Guard Card products including, without limitation, the placement of corrective advertising and providing written notice to consumers.

    C. That Defendants be adjudged to have violated 15 U.S.C. § 1125(a) by unfairly competing against Scanner Guard by using false, deceptive or misleading statements of fact that misrepresent the nature, quality and characteristics of the Stealth Card and the Scanner Guard Card products.

    D. That Scanner Guard be awarded the damages sustained as a direct and consequential result of Defendants' illegal conduct.

    E. That Defendants be ordered to disgorge to Scanner Guard any and all profits earned by or through their illegal conduct.

    F. That Scanner Guard be awarded the reasonable costs and attorneys' fees incurred in connection with the prosecution of this action.

    G. That the Court order removal and destruction of all of Defendants' misleading and deceptive materials pursuant to 15 U.S.C. § 1118,

    H. That Scanner Guard be granted pre-judgment and post-judgment interest on any monetary award obtained in this action, as may be allowed by law.

    I. That Scanner Guard be awarded any and all such other relief that the Court deems just and proper.

**Count II**
**Violation Of FDUTPA, Fla. Stat. §§ 501.201 *et seq.***

  53. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

  54. By making the above false representations concerning the Stealth Card and Scanner Guard Card products, Defendants have violated § 501.204 of the FDUTPA, which

12

prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

55. Scanner Guard has been injured, and continues to be injured, by Defendants' actions in violation of the FDUTPA.

56. Defendants have caused, and will continue to cause, immediate and irreparable injury to Scanner Guard, including injury to Scanner Guard's business, reputation and goodwill, for which there is no adequate remedy at law.

57. Scanner Guard is therefore entitled to an injunction under the FDUTPA restraining Defendants, their agents, employees, representatives and all persons acting in concert with Defendants from engaging in future acts of false advertising that violate the FDUTPA, and ordering removal of all such Defendants' false advertisements.

58. Scanner Guard is entitled to recover from Defendants the damages sustained by Scanner Guard as a result of Defendants' acts in violation of the FDUTPA. Scanner Guard is, at present, unable to ascertain the full extent of the monetary damages it has sustained on account of Defendants' illegal acts.

59. Pursuant to § 501.2105 of the FDUTPA, Scanner Guard is entitled to recover its reasonable attorneys' fees incurred in connection with this action. Defendants' conduct was undertaken willfully and with the intention of causing confusion, mistake or deception, thus making this an exceptional case entitling Scanner Guard to recover additional damages and reasonable attorneys' fees.

**WHEREFORE**, Scanner Guard demands judgment in its favor and against Defendants on Count II of its Complaint as follows:

PHIL1 5192526v.1

A. That an appropriate cease and desist order be entered to abate Defendants' illegal activity.

B. That Scanner Guard be awarded the damages sustained as a direct and consequential result of Defendants' illegal conduct.

C. That Scanner Guard be awarded the reasonable attorneys' fees and costs incurred in connection with the prosecution of this action.

D. That Scanner Guard be granted pre-judgment and post-judgment interest on any monetary award obtained in this action, as may be allowed by law.

E. That Scanner Guard be awarded any and all such relief that the Court deems just and proper.

KLEHR HARRISON
HAVEY BRANZBURG LLP

Date: February 1, 2016

Lisa A. Lori
William J. Clements
1835 Market Street, 14th Floor
Philadelphia, PA 19103
Ph (215) 569-2700
Fax (215) 568-6603
llori@klehr.com
wclements@klehr.com